**Charles H. PALDA, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**S. R. OKES, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**ESTATE OF Day OKES, Deceased, Erma J. Okes, Executrix, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

Nos. 15771–15773.

United States Court of Appeals Eighth Circuit.

March 6, 1958.

William H. Oppenheimer, St. Paul, Minn. (Oppenheimer, Hodgson, Brown, Baer & Wolff, St. Paul, Minn., on the brief), for petitioners.

C. Guy Tadlock, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson and Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before GARDNER, Chief Judge, and WOODROUGH and VOGEL, Circuit Judges.

WOODROUGH, Circuit Judge.

These consolidated petitions for review involve income and victory tax deficiencies for the year 1943, in the total amount of $1,232,049.89, and are taken from decisions of the Tax Court, reviewed by the full court, and entered on December 4, 1956, reported at 27 T.C. 445, as modified by amended decision entered January 2, 1957. The Tax Court declared the sole issue before it to be whether the taxpayers, claiming exemption from tax on their income from a business conducted in the Panama Canal Zone by their partnership as a joint venture with another company, properly excluded from gross income their distributive shares of profits from the joint venture.

The taxpayers contended before the Tax Court, and now contend on these petitions for review of that court's decision, that they as individual citizens of the United States were entitled to include only their distributive shares of the net income of the partnership for the purpose of determining their taxable income.

The Tax Court's holding, as summarized in the syllabus of its decision, was:

"In computing the percentage of gross income required by Section 251, Internal Revenue Code of 1939, relating to income from United States possessions, *held*, a partner's gross income includes his distributive share of gross income of the partnership."

The facts as found by the Tax Court are not disputed. They are set forth in the report of the decision and have been restated by Government counsel, without dispute, as follows:

"The three taxpayers (Charles H. Palda, S. R. Okes, and Day Okes (now deceased)) are United States citizens who engaged in the construction business under the name of Okes Construction Company, a partnership (hereinafter referred to as such) which maintained its books and filed its partnership returns (Form 1065) according to the percentage of completion-accrual method of accounting. The partnership filed those returns on a fiscal year basis for the year ended February 28, 1942, but when the Commissioner granted permission to change to

the calendar year basis it filed an information return for the period March 1, 1942, to December 31, 1942, and thereafter filed its information returns on the calendar year basis. Taxpayers each filed their income tax returns according to the cash receipt and disbursement method. Each 1943 return contained a Form 1040–E.

"As of October 4, 1940, the Washington D. C., office of the Panama Canal invited bids for the furnishing of all plant, labor and materials and performance of work required for the excavation of an approach channel, a lock structure and a drainage canal, and for grading a railroad relocation, all in connection with the construction of a third set of locks on the Atlantic side of the Panama Canal in the Panama Canal Zone, a United States possession. Taxpayers' partnership and Martin Wunderlich Company, another partnership also engaged in the construction business, jointly submitted a bid to do the work and the bid was accepted. On January 6, 1941, the United States entered into a contract with the joint venture at a price of $8,517,100. Subsequent change orders and supplemental agreements changed and enlarged the contract so that the total price exceeded $12,000,000. In 1943 the joint venture at various times also contracted with the United States to do certain other work in the Panama Canal Zone for final amounts totalling $252,728.51. Except for certain work in Nicaragua, the joint venture engaged in and performed all work in the Canal Zone.

"The joint venture commenced operations under the main contract early in 1941 and completed work under the Canal Zone contracts in October 1943. It finally concluded its business on December 31, 1943. The used construction equipment was sold to the United States, in conformity to the usual custom and usage of the trade.

"The joint venture maintained its books and filed information returns on Form 1065 acording to the percentage of completion-accrual method. Its first fiscal year ended January 31, 1942, but, after receiving permission from the Commissioner to change to the calendar year basis of reporting, it filed an information return for the period February 1, 1942, to December 31, 1942, and thereafter filed its returns on the calendar year basis.

"Taxpayers' partnership had a 25 per cent interest in the joint venture. Taxpayers Day Okes and S. R. Okes each had a 40 per cent interest, and taxpayer Charles H. Palda a 20 per cent interest, in all income received by their partnership from the Canal Zone joint venture. After February 28, 1942, the income from sources other than the joint venture were shared equally by the three taxpayer-partners.

"During the fiscal year ended February 28, 1942, taxpayers' partnership received gross income from the projects within the United States and Canada amounting to $658,350.14, including miscellaneous receipts of $8,200.71. For the period ended December 31, 1942, the partnership's gross income from such projects was $381,891.57, including miscellaneous receipts of $13,277.10. For the calendar year 1943, the gross income of the partnership from such projects was $160,278.55, including miscellaneous receipts of $8,294.94.

"It is stipulated that, if taxpayers' 'gross income' under Section 251(a) of the 1939 Code, 26 U.S.C. § 251(a) was their proportionate shares of their partnership's gross income (from the Canal Zone joint venture and projects within the United States and Canada), taxpayers' gross income from the Canal

Zone venture was not 80 per cent or more of their total gross income. It is further stipulated that, if taxpayers' 'gross income' under Section 251(a) was their proportionate shares of their partnership's net income and the partnership's net income includes long term capital gain from sales of equipment by the joint venture, each taxpayer's gross income for the pertinent period from the Canal Zone joint venture was 80 per cent or more of his total gross income. Further, if the partnership net income is treated as taxpayer's 'gross income' for the purposes of Section 251(a) but the capital gains from sales of equipment by the joint venture are excluded, taxpayers Day Okes and S. R. Okes' gross income from the Canal Zone venture was 80 per cent or more of their total gross income but taxpayer Charles H. Palda's was 80 per cent or more only for 1942."

As an ultimate fact, the Tax Court found that—

"Each petitioner derived less than 80 per cent of his gross income for the applicable part of the 3 year periods immediately preceding the close of 1942 and 1943 from the active conduct of a trade or business within a possession of the United States, namely, the Canal Zone."

As facts bearing on the source and receipt of the income by taxpayers from the Canal Zone joint venture, the Tax Court found the following:

"On December 24, 1940, which was shortly before the United States entered into the contract with the joint venture for the Canal Zone work, the joint venture opened a bank account with the First National Bank of St. Louis, Missouri, and deposited $850,000, consisting of the capital contributions of Martin Wunderlich Company of $637,500, and of taxpayers' partnership of $212,500. It referred to this account as Special Account. The joint venture also opened the following bank accounts on the dates indicated:

| Name or Number of Account | Bank | Date Opened |
| --- | --- | --- |
| Special Account | Chase National Bank of the City of New York Branch in Cristobal, Panama C.Z. | 4–23–41 |
| Account No. 1 Equipment Account | First National Bank in St. Louis, Mo. | 1–7–41 |
| Account No. 2 Travel Account | First National Bank, St. Paul, Minn. | 1–7–41 |
| Account No. 3 Jobbing Account | Chase National Bank of the City of New York Branch in Cristobal, C.Z. | 1–7–41 |
| Account No. 4 Payroll Account | Chase National Bank of the City of New York Branch in Cristobal, C.Z. | 1–7–41 |
| Account No. 5 Panama Supply | First National Bank, St. Louis, Missouri | 3–15–41 |
| Account No. 6 Rental Account | First National Bank, St. Louis, Missouri | 3–2–43 |

"The joint venture received in the Canal Zone all money paid it on account of the Canal Zone contracts and operations, including rental (except for equipment leased to Martin Wunderlich Company for use in Costa Rica) and sale of equipment. It deposited that money in the Special Account of the Chase National Bank Branch in Cristobal. It utilized this account to pay expenses arising from the performance of the Canal Zone contracts and operations.

"From time to time, the joint venture transferred funds from the Special Accounts in Cristobal and St. Louis to replenish its other bank accounts for operating expenses. It also made some withdrawals directly from the Special Accounts to pay operating expenses. The joint venture received rental income derived from the Martin Wunderlich leases in the United States which it deposited in the rental account (Account No. 6) in the First National Bank of St. Louis.

"A Joint Signature and Surety Agreement and an amended Joint Signature and Surety Agreement embodied the basic restrictions and requirements for withdrawing profits from the operations of the joint venture. The joint venture complied with the restrictions and requirements set forth in the agreements in conducting its business transactions and financial operations.

"When it was decided that profits should be distributed, Martin Wunderlich corresponded with the representative of the National Surety Corporation at New York, the surety on the bond of the joint venture in connection with the contract. He requested permission to withdraw a specified amount from the Special Account with either the Chase National Bank or the First National Bank at St. Louis. The representative then transmitted a statement to the surety showing the effect of the requested withdrawal on the joint venture's operations, together with the request for permission to distribute profits. If the representative received approval from the surety for the distribution, he notified Wunderlich. Upon receipt of this information, Wunderlich instructed Taylor, the comptroller of the joint venture at Cristobal, to draw a check upon the Special Account with either the Chase National Bank or the First National Bank at St. Louis for the amount of the desired withdrawal. Taylor then delivered this check to Wunderlich, wherever he might be, for his signature. Wunderlich, after signing the check, mailed it, usually to St. Paul, for the signature of either S. R. Okes or Day Okes. After Day Okes or S. R. Okes received and signed the check he then mailed it to the surety's representative to be countersigned. The representative then mailed it to taxpayers' partnership if it was payee, at its principal office in St. Paul, for endorsement. After the partnership received and endorsed certain checks, it mailed them to the Chase National Bank at Cristobal to be used to purchase drafts payable to the partnership drawn on the Chase National Bank of New York. These drafts, equal to the amounts on the checks less the charges for the drafts, were then mailed to the partnership in St. Paul and deposited in its bank account at the First National Bank at St. Paul. The partnership endorsed and deposited the other checks directly in its bank account in the First National Bank at St. Paul without forwarding to Cristobal for the purchase of drafts.

"Each partner of the partnership had unrestricted authority to sign checks drawn on the partnership's bank account at the First National Bank at St. Paul. Checks drawn

on the joint venture bank accounts numbered 1 through 6 required the signatures of only a representative of each of the partnership and the Martin Wunderlich Company.

"The following shows the time spent by taxpayers on their trips to the Canal Zone, including the dates that each left and returned to St. Paul.

| Date of Leaving St. Paul | | Trip Made by | Date of Return to St. Paul |
|---|---|---|---|
| 1941 | 1–14–41 | S. R. Okes | 2–25–41 |
| | 1–14–41 | C. H. Palda | 5–15–41 |
| | 3–15–41 | Day Okes | 5–1 –41 |
| | 7–22–41 | Day Okes | 8–4 –41 |
| 1942 | 2–24–42 | C. H. Palda | 5–16–42 |
| 1943 | 5–18–43 | S. R. Okes | 6–12–43 |

"The estimated travel time for each round trip between St. Paul and the Canal Zone taken by each taxpayer from 1941 through 1943 was six days. Assuming six days travel time, during 1941 taxpayers Palda, Day Okes and S. R. Okes respectively spent no more than 115 days, 44 days and 30 days in the Canal Zone. Allowing for travel time, during 1942 Palda spent no more than 76 days in the Canal Zone and neither Day Okes nor S. R. Okes was there during the year. Allowing for travel time, during 1943, S. R. Okes spent 19 days in the Canal Zone and neither Day Okes nor Palda was there during the year.

"In holding that taxpayers' income from the Canal Zone joint venture is not exempt from tax under Section 251 of the Internal Revenue Code of 1939, the Tax Court placed its decision on the ground that each taxpayer's gross income from the joint venture was not 80 per cent or more of his total gross income. That holding resulted from the Tax Court's conclusion that, as applied to partnership income, the words 'gross income' in Section 251 mean the partnership gross income. Having held against taxpayers on that ground, the Tax Court found it un-necessary to consider whether taxpayers met other conditions to exemption under Section 251."

The question presented here for review is also correctly restated as follows:

"Whether taxpayers qualify under Section 251 of the Internal Revenue Code of 1939 for exemption from tax on their income from a business conducted in the Panama Canal Zone by their partnership as a joint venture with another company."

The statute and regulations involved are as follows: Internal Revenue Code of 1939:

" § 22. Gross income.

"(a) General definition. 'Gross income' includes gains, profits, and income derived from * * * businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use or interest in such property; also from * * * the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *" (26 U.S.C. 1952 ed., Sec. 22.)

"Supplement J.—Possessions of the United States § 251. Income

from sources within possessions of the United States

"(a) General rule. In the case of citizens of the United States or domestic corporations, satisfying the following conditions, gross income means only the gross income from sources within the United States—

"(1) If 80 per centum or more of the gross income of such citizen or domestic corporation (computed without the benefit of this section), for the three-year period immediately preceding the close of the taxable year (or for such part of such period immediately preceding the close of such taxable year as may be applicable) was derived from sources within a possession of the United States; and

\* \* \* \* \* \*

"(3) If, in case of such citizen, 50 per centum or more of his gross income (computed without the benefit of this section) for such period or such part thereof was derived from the active conduct of a trade or business within a possession of the United States either on his own account or as an employee or agent of another.

"(b) Amounts received in United States. Notwithstanding the provisions of subsection (a) there shall be included in gross income all amounts received by such citizens or corporations within the United States, whether derived from sources within or without the United States. \* \* \*" (26 U.S.C. 1952 ed., Sec. 251.)

Treasury Regulations 111, promulgated under the Internal Revenue Code of 1939:

"Sec. 29.251–2. Income Received Within the United States—Notwithstanding the provisions of section 251(a), there shall be included in the gross income of citizens and domestic corporations therein specified all amounts, whether derived from sources within or without the United States, which are received by such citizens or corporations within the United States. From the amounts so included in gross income there shall be deducted only the expenses properly apportioned or allocated thereto. For instance, if in the example given in section 29.251–1, the taxpayer during the latter period of 1942 returned to the United States for a few weeks and while there received the proceeds resulting from the sale of the Puerto Rican real estate, the profits derived from such sale transaction should be reported in gross income. Such receipt in the United States, however, would not deprive the taxpayer of the benefits of section 251 with respect to other items of gross income excluded by this section."

"Sec. 29.251–4. Definition.— \* \* \* The term 'possession of the United States,' as used in section 251 and 252 \* \* \* includes \* \* the Panama Canal Zone \* \* \*."

Certain Code provisions relating to the reporting of partnership income also become relevant: Section 181 of the Internal Revenue Code of 1939 states that "Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity". Section 182 states that "In computing the net income of each partner, he shall include, whether or not distribution is made to him", his distributive share of capital gains and losses and—

"(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183 (b)."

Section 183, to which reference is there made, is entitled "Computation of partnership income". Subsection (b) provides in pertinent part as follows:

"(b) [as amended by Sec. 150(g) (2) (A), Revenue Act of 1942, c. 619, 56 Stat. 798] Segregation of Items.

\* \* \* \* \* \*

"(2) Ordinary net income or loss. After excluding all items of gain and loss from sales or exchanges of capital assets, there shall be computed—

"(A) An ordinary net income which shall consist of the excess of the gross income over the deductions; or

"(B) An ordinary net loss which shall consist of the excess of the deductions over the gross income.
\* \* \* "

The Tax Court declared that the taxpayers in this case can "concededly succeed in keeping their Canal Zone income above 80 per cent and hence in eliminating that income under Section 251, Internal Revenue Code of 1939, only if they are permitted to disregard the partnership gross income and treat their distributive share of partnership net income as the constituent part of their personal 'gross income'.", and that the taxpayers "fail to conform to the 80 per cent requirement of Section 251."

■ We think the conclusion is fully supported by the evidence, reasoning and authorities cited by the Tax Court. Government counsel have added the following relevant and supporting citations of authority in their brief: Helvering v. Bruun, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864; Commissioner of Internal Revenue v. Paley, 9 Cir., 232 F.2d 915, certiorari denied 352 U.S. 838, 77 S.Ct. 59, 1 L.Ed.2d 56; United States v. Shapiro, 8 Cir., 178 F.2d 459; Commissioner of Internal Revenue v. Whitney, 2 Cir., 169 F.2d 562, certiorari denied 335 U.S. 892, 69 S.Ct. 246, 93 L.Ed. 429; Baltzell v. Mitchell, 1 Cir., 3 F.2d 428.

The Tax Court's observation that "if the petitioners had been doing business as individual sole proprietors in the United States, there would be no question that the Statute would be ineffective to exclude this income" recurs to mind throughout each argument that has been presented for allowing the exemption claimed here.

■ Section 251 does not accord its exemption to members of a partnership in any express words, but the exemption inures to partners because the Government looks to them as the ones who pay the taxes in respect to their partnerships' profits. The taxpayers here must bring themselves within the requirements of Section 251(a) (3) by proof that each was a citizen, 50 per cent of whose gross income was "derived from the active conduct of a trade or business within a possession of the United States either on his own account or as an employee or agent of another". Each did meet the requirement of "deriving income from the active conduct of a business within a possession" on the basis of a business conducted by him in partnership by treating it as a business conducted by the citizen on his own account to the extent of his proportionate interest in the business. When so treated, his share of the gross income of the business is necessarily his gross income. A citizen who conducts a business on his own account must be charged with the gross income of the business. Neither taxpayer in this case, when properly charged with his share of the gross income of the Canal Zone business, can meet the 80 per cent requirement of the Section. As stated by the Tax Court, "Congress was careful to employ the gross income concept and we are powerless to modify it by use of the net income approach".

We have carefully considered each of petitioners' contentions but, in view of the reasoning of the Tax Court with which we are in accord, none appears to require further discussion by this Court, and the decisions of the Tax Court are approved. The cases are remanded to the Tax Court to take appropriate action relating to amendment of its decisions in respect to the amounts of tax deficiencies involved in accord with the stipulation of the parties filed herein on September 27, 1957.