F. A. FALCONER AND BLANCHE W. FALCONER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1847–62.   Filed September 23, 1963.

*Clair F. Achenbach,* for the petitioners.
*Thomas J. Moroney, Jr.,* for the respondent.

#### OPINION

DAWSON, *Judge:* Respondent determined deficiencies in the petitioners' income taxes as follows:

| Year | Deficiency |
|------|-----------|
| 1957 | $397.07 |
| 1958 | 1,114.85 |

The issues for decision are:

(1) Whether amounts received by petitioner F. A. Falconer during the calendar years 1957 and 1958 from a partnership were guaranteed payments under the provisions of section 707(c), I.R.C. 1954,[1] and taxable income to petitioners under section 61(a)(1).

(2) Whether amounts received by petitioner F. A. Falconer during the taxable year 1958 from a corporation are income to him in that year.

(3) Whether the petitioner F. A. Falconer is entitled to a deduction during the taxable year 1958 as his share of the partnership's net operating loss.

All of the facts have been stipulated by the parties.   The stipulation of facts and exhibits attached thereto are incorporated in this opinion by reference.

Petitioners are husband and wife residing in Dallas, Tex., who filed joint individual income tax returns for the years 1957 and 1958 on the

---

[1] All references herein to Code sections and regulations are to the Internal Revenue Code of 1954 unless otherwise indicated.

calendar year basis and on the cash basis of accounting. Their 1957 income tax return was filed with the district director of internal revenue at Little Rock, Ark., and their 1958 income tax return was filed with the district director of internal revenue at Dallas, Tex.

On or about September 1, 1957, F. A. Falconer (hereinafter referred to as petitioner) entered into a partnership agreement with Stella Breazeale (sometimes hereinafter referred to as petitioner's partner) to operate an employment agency, doing business under the name of Acme Employment Service (sometimes referred to herein as the partnership). The partnership agreement, dated November 5, 1957, provided in pertinent part, as follows:

5

Each partner agrees to give all of his or her time to the business and exert his or her best efforts to the furtherance of the interests of the partnership to the end that maximum results can be obtained for their mutual benefit.

6

As compensation for services to be rendered by the partners, each is to be paid as a salary the sum of $150.00 per week, such salaries to be paid on such date of the week as may be mutually agreed. The amount of compensation for each partner so agreed to is subject to change only by the mutual agreement of the partners. The salaries so paid insofar as the partners are concerned shall be considered as a part of the operating expense of the business.

7

It is recognized by the partners that Breazeale has advanced certain sums of money to the partnership and may advance additional sums before the business has attained a sufficient volume of business and attained successful operation so as to pay the operating costs and expenses. It is agreed when the income of the business is sufficient to meet the cost of operations, any and all excess of such income shall be paid monthly to Breazeale until she has been repaid in full all of such advances.

The ownership of the partnership business shall be on the basis of 50% by Falconer and 50% by Breazeale, and after all advances referred to in the preceding paragraph have been paid to Breazeale, the share of the net profits shall be paid to Falconer as to 50% and paid to Breazeale as to 50%; the division of the net profits and the payment of the same to the respective partners shall be at such time or times as the partners may from time to time mutually agree. In the event of losses accruing to the partnership, each partner shall contribute his or her 50% portion of such loss or losses so that each partner shall bear his or her just portion of such loss and thus avoid the necessity of either partner having to suffer the entire loss. Neither partner shall draw from the business more than his or her respective portion of the net profits without the written consent of the other.

\*        \*        \*        \*        \*        \*        \*

9

In the event of the total disability of either of the partners, such disability shall not constitute a dissolution of the partnership, but if such disability shall continue for more than six months, the compensation provided in Paragraph 6

shall not be paid to the disabled partner after such six month period has expired, but such disabled partner shall continue to participate in the net profits of the business and shall be liable for his or her portion of the losses on the same basis as if he or she continued to be active in the business. Nothing in this paragraph contained shall prevent a dissolution of the partnership at any time by mutual agreement of the partners or by either of the partners as will be set out in Paragraph 10 hereof.

The partnership continued in business until May 12, 1958, at which time it was dissolved and was succeeded by a corporation organized under the laws of the State of Texas. It adopted the name of Acme Employment Service, Inc. (sometimes hereinafter referred to as the corporation).

A partnership income tax return of petitioner and Stella Breazeale, doing business as the Acme Employment Service, was initially filed for the partnership for the period commencing September 1, 1957, and ending April 30, 1958, with the district director of internal revenue at Dallas, Tex. This return shows income in the amount of $6,434.80, operating expenses totaling $13,436.62, and a net loss of $7,001.82. It is labeled "First and Final Return."

After filing the first partnership income tax return, an unsigned partnership income tax return of petitioner and Stella Breazeale, doing business as the Acme Employment Service, for the period commencing January 1, 1958, and ending December 31, 1958, was filed with the district director of internal revenue at Dallas, Tex. A loss of $7,292.62 was shown on the return. By letter dated July 10, 1959, addressed to petitioner and Stella Breazeale, the district director advised them that the partnership income tax return had not been executed and requested them to execute a declaration which should have been signed on the return. The declaration was not executed and returned to the district director.

Subsequent to the filing of both of these partnership income tax returns, still another unsigned partnership return of petitioner and Stella Breazeale, doing business as the Acme Employment Service, covering the period commencing September 1, 1957, and ending June 30, 1958, was filed with the district director of internal revenue at Dallas, Tex. A loss of $7,292.62 was shown on this return. Attached thereto is a schedule designated "Withdrawals Made by F. A. Falconer." Such unexecuted return is identical with the return described in the preceding paragraph except that the period in the former return was interlined and another period substituted therefor. Such partnership income tax return has likewise not been executed.

During the calendar year 1957 the petitioner received weekly payments from the partnership under the terms of the partnership agreement aggregating $2,550, which sum was not reported by petitioners as income on their individual income tax return for such year or any other year.

During the period commencing September 1, 1957, and ending June 30, 1958, the petitioner received weekly payments aggregating $6,450, no part of which was reported by petitioners as income on their individual income tax return for the calendar year 1957, the calendar year 1958, or any other year.

Of such sum of $6,450, petitioner received income from the partnership under the terms of the partnership agreement in the amount of $2,850 from January 1, 1958, through May 10, 1958. From May 17, 1958, through June 28, 1958, petitioner received $1,050 from the corporation as salary, totaling $3,900 during the calendar year 1958, none of which was reported by petitioner in their income tax return for such year. The schedule attached to the last mentioned partnership return reflects the amounts paid by the partnership and the successor corporation and the dates such payments were made.

Petitioner made no contributions to the capital of the partnership. Stella Breazeale contributed all the capital of $19,775. Petitioner executed on May 12, 1958, which was the date the partnership dissolved, a demand promissory note, payable to the order of Stella Breazeale, in the principal sum of $9,862.50.

During the calendar year 1958 the petitioners claimed on their individual income tax return a loss of $3,646.31 from the operation of such partnership.

In his statutory notice of deficiency dated February 28, 1962, the respondent gave the following explanations for his adjustments:

*1957*

(a) It is determined that the weekly payments aggregating $2,550.00, which you received from the partnership Acme Employment Service in 1957, and which were not reported on your return, constituted taxable income under the internal revenue laws. Adjusted gross income is being increased accordingly.

*1958*

(a) It is determined that the weekly payments, aggregating $6,450.00, which you received from the partnership, Acme Employment Service and/or its successors, during the period September 1, 1957, through June 30, 1958, which were not reported on your returns, were taxable income to you for the calendar year 1958 under internal revenue laws. Accordingly, your 1958 income is being increased by $6,450.00.

(b) It is determined that, under the internal revenue laws, you are not entitled to a deduction for any part of the loss of $3,646.31 alleged to have been incurred from the operation of the partnership, Acme Employment Service, in the years 1957 and 1958.

## Issue 1. Guaranteed Payments

It is the petitioner's contention that the payments, totaling $5,400, which he received from the partnership in 1957 and 1958 were loaned to him by his partner, Stella Breazeale, and, therefore, created a debt to her, as evidenced by the demand promissory note executed on the

date the partnership was dissolved. Respondent, on the other hand, argues that the amounts received constitute guaranteed salary payments under the provisions of section 707(c).[2] We agree with the respondent.

Section 707(c) has no counterpart in the Internal Revenue Code of 1939. It initially appeared in the Internal Revenue Code of 1954. Since we have been unable to locate in our research any court decisions pertaining directly to the issue here presented, we approach the problem as one of first impression. But compare *Foster* v. *United States*, (S.D.N.Y. 1963, 12 A.F.T.R. 2d, par. 63–5058, 63–2 U.S.T.C. par. 9588). The legislative history of section 707(c) reveals that it was specifically intended to require ordinary income treatment to the partner receiving guaranteed salary payments and to give a deduction at the partnership level.[3]

The touchstone for determining "guaranteed payments" is whether they are payable without regard to partnership income. And, in determining whether in a particular case an amount paid by a partnership to a partner is a "drawing" or a "guaranteed payment," the substance of the transaction, rather than its form, must govern. See sec. 1.707–1(a), Income Tax Regs. These are both factual matters to be judged from all the circumstances.

We are convinced that the facts of this case clearly place the payments made to petitioner within the ambit of the term "guaranteed payments" as used in section 707(c). Paragraph 6 of the partnership agreement provided that each partner was to receive a salary of $150 per week from the partnership as compensation for services rendered; that the amount of the *compensation* agreed to was subject to change only by mutual agreement of the partners; and that such *salaries* were to be considered a part of the operating expenses of the business. In addition, paragraph 9 of the partnership agreement provided that, if a partner should be disabled for more than 6 months, the *compensation* provided for in paragraph 6 would not be paid to the disabled partner after such 6-month period expired. There is no doubt in our minds that these weekly salary payments were made

[2] SEC. 707. TRANSACTIONS BETWEEN PARTNER AND PARTNERSHIP.

(c) GUARANTEED PAYMENTS.—To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and section 162(a) (relating to trade or business expenses).

[3] S. Rept. No. 1622 to accompany H.R. 8300, 83d Cong., 2d sess., p. 387 (1954), contains the following explanation:

"Subsection (c) provides a rule with respect to guaranteed payments to members of a partnership. A partner who renders services to the partnership for a fixed salary, payable without regard to partnership income, shall be treated, to the extent of such amount, as one who is not a partner, and the partnership shall be allowed a deduction for a business expense. The amount of such payment shall be included in the partner's gross income, and shall not be considered a distributive share of partnership income or gain. A partner who is guaranteed a minimum annual amount for his services shall be treated as receiving a fixed payment in that amount."

"without regard to the income of the partnership." The partnership was being operated at a loss and, consequently, it was necessary to make the guaranteed salary payments out of the capital Stella Breazeale had contributed. Petitioner's mere characterization of the payments in the partnership returns as "withdrawals" is not persuasive when viewed in connection with the precise provisions of the partnership agreement. This leads us inescapably to the conclusion that the amounts received by petitioner from the partnership under the terms of the agreement are guaranteed payments without regard to the income of the partnership and, as such, are includable in his gross income.[4]

Under the provisions of section 706(a)[5] such payments are characterized as ordinary income to the recipient for his taxable year within or with which ends the partnership taxable year in which the partnership deducted the payments. Hence, the taxable year of the partnership must be first determined.[6]

In view of these rules and the facts herein, this partnership could only adopt a calendar year basis. Since the petitioner reported his income on a calendar year basis during 1957 and 1958, and was a principal partner by virtue of owning a 50-percent interest in the partnership, the partnership was precluded from adopting a fiscal year basis without the prior approval of the Secretary of the Treasury or his delegate. The record not only fails to reveal such approval, but there is no evidence that such approval was ever sought. Thus, the only recourse remaining to the partnership was the adoption of a calendar year which under the specific language of section 1.706–1(b)(1)(ii), Income Tax Regs., does not require the prior approval of the Commissioner. See *Austin Clapp*, 36 T.C. 905 (1961), where we construed the provisions of section 706(b)(1) and the regulations with respect thereto. It then follows that the payments, totaling $2,550, made to petitioner during the partnership's taxable year ending December 31, 1957, were includable in his taxable income for the

---

[4] See sec. 61(a)(1).

[5] SEC. 706. TAXABLE YEARS OF PARTNER AND PARTNERSHIP.

(a) YEAR IN WHICH PARTNERSHIP INCOME IS INCLUDIBLE.—In computing the taxable income of a partner for a taxable year, the inclusions required by section 702 and section 707(c) with respect to a partnership shall be based on the income, gain, loss, deduction, or credit of the partnership for any taxable year of the partnership ending within or with the taxable year of the partner.

[6] SEC. 706(b). ADOPTION OF TAXABLE YEAR.—

(1) PARTNERSHIP'S TAXABLE YEAR.—The taxable year of a partnership shall be determined as though the partnership were a taxpayer. A partnership may not change to, or adopt, a taxable year other than that of all its principal partners unless it establishes, to the satisfaction of the Secretary or his delegate, a business purpose therefor.

(2) PARTNER'S TAXABLE YEAR.—A partner may not change to a taxable year other than that of a partnership in which he is a principal partner unless he establishes, to the satisfaction of the Secretary or his delegate, a business purpose therefor.

(3) PRINCIPAL PARTNER.—For the purpose of this subsection, a principal partner is a partner having an interest of 5 percent or more in partnership profits or capital.

calendar year 1957. Since the partnership's existence terminated[7] upon its dissolution on May 12, 1958, the partnership taxable year was closed on that date.[8] As a result thereof, the guaranteed payments of $2,850 made by the partnership during the taxable year beginning January 1, 1958, and ending May 12, 1958, were includable in petitioner's taxable income for the calendar year 1958.

Petitioner stresses that the "withdrawals by F. A. Falconer, constituted a loan to him and not income." We find no merit in this position. His attempt to cast the relationship between himself and Stella Breazeale as that of debtor and creditor is wholly inconsistent with the express terms of the partnership agreement and contrary to all outward manifestations of their intent. Nor are we swayed by the fact that the petitioner executed a demand note for $9,862.50 to Stella Breazeale on the day the partnership was terminated. We do not even know for what purpose the note was given. The petitioner, who has the burden of proof, offered no evidence regarding it. Consequently, any conclusions we might try to draw with respect to the note and the purpose for it would be purely speculative. Even if we assume, as petitioner would have us do, that the note represented the "withdrawals" by the petitioner from the partnership and "his part of the expenses" paid from the capital account, it cannot serve to convert what was paid as salaries into something else. Certainly the character of such payments cannot be changed retroactively into a loan.

*Issue 2. Corporate Salary*

The parties have stipulated that from "May 17, 1958, through June 28, 1958, petitioner received $1,050.00 from the corporation as salary, * * * none of which was reported in the income tax return of petitioners for such year." Because the payments were "salary," they are clearly includable in his gross income for 1958. See sec. 61 (a) (1) ; *Commissioner* v. *Smith*, 324 U.S. 177 (1945) ; and *Old Colony Tr. Co.* v. *Commissioner*, 279 U.S. 716 (1929). This conclusion is so basic that further citation of authority is unnecessary. Therefore, we sustain the respondent on this issue.

---

[7] SEC. 708. CONTINUATION OF PARTNERSHIP.
   (b) TERMINATION.—
      (1) GENERAL RULE.—For purposes of subsection (a), a partnership shall be considered as terminated only if—
        (A) no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership, or
[8] SEC. 706. TAXABLE YEARS OF PARTNER AND PARTNERSHIP.
   (c) CLOSING OF PARTNERSHIP YEAR.—
      (1) GENERAL RULE.—Except in the case of a termination of a partnership and except as provided in paragraph (2) of this subsection, the taxable year of a partnership shall not close as the result of the death of a partner, the entry of a new partner, the liquidation of a partner's interest in the partnership, or the sale or exchange of a partner's interest in the partnership.

### Issue 3. Net Operating Loss

At the outset of our discussion on this issue we observe that only the partnership return signed by the petitioner can be used for determining any partnership loss. The two later unsigned partnership returns are of no avail.[9]

From the inception of the partnership through its dissolution, the petitioner made no contributions to capital. By the provisions of section 704(d), a partner may deduct currently his portion of distributable losses only to the extent of the adjusted basis of his interest in the partnership. Stated differently, a partner in any accounting year may deduct all of his portion of partnership loss *only* if he has sufficient "capital" retained in the partnership. Thus a determination of the basis of petitioner's partnership interest becomes necessary. Section 705 sets forth the basis of a partner's interest. Insofar as pertinent here, section 705(a)(2)(A) provides that the adjusted basis of a partner's interest in a partnership shall be the basis of such interest determined under section 722 [10] decreased (but not below zero) by the sum of his distributive share for the taxable years and prior taxable years of losses of the partnership. Since petitioner contributed neither money nor property to the partnership, the basis of his interest was zero. As previously noted, the petitioner's distributive share of the partnership loss is limited by section 704(d) to his adjusted basis, which was also zero, in determining the amount allowable as a deduction under section 702(a)(9).[11] Accordingly, we conclude that none of the loss of the partnership is deductible by petitioner in either 1957 or 1958.

Because the respondent's statutory notice of deficiency included the sum of $2,550 in the income of petitioners for both 1957 and 1958,

*Decision will be entered under Rule 50.*

---

[9] See section 6063, which requires that a partnership return must be signed by one of its partners.

[10] SEC. 722. BASIS OF CONTRIBUTING PARTNER'S INTEREST.

The basis of an interest in a partnership acquired by a contribution of property, including money, to the partnership shall be the amount of such money and the adjusted basis of such property to the contributing partner at the time of the contribution.

[11] SEC. 702. INCOME AND CREDITS OF PARTNER.

(a) GENERAL RULE.—In determining his income tax, each partner shall take into account separately his distributive share of the partnership's—

*        *        *        *        *        *        *

(9) taxable income or loss, exclusive of items requiring separate computation under other paragraphs of this subsection.