Thomas Browne FOSTER, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 258, Docket 28533.

United States Court of Appeals
Second Circuit.

Argued Jan. 10, 1964.

Decided March 31, 1964.

David Sachs, New York City (White & Case, New York City, on the brief), for plaintiff-appellant.

Robert Arum, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and KAUFMAN and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge:

In this suit for refund of income taxes paid for the years 1953 and 1954, taxpayer appeals from a judgment for the Government entered after trial without jury. It will be seen from an examination of Judge Levet's opinion below, 221 F.Supp. 291, that the principal issue on the trial was whether appellant's monthly drawing account, which he received while in Saudi Arabia as a partner in the firm of Emerson Engineers, was a salary, therefore "[e]arned income from sources without the United States" within the meaning of sections 116(a) of the Internal Revenue Code of 1939 and 911 of the Internal Revenue Code of 1954, and hence excludible from gross income; or was part of his distributive share of the partnership income, and hence taxable to the extent that the partnership as a whole realized income from sources within the United States. The court resolved this issue in the Government's favor.

■ On this appeal, however, the taxpayer has abandoned this line of argument. Conceding that the entire amount received from the partnership was part of his distributive share, the taxpayer now argues that it is nevertheless wholly excludible from his gross income. He asserts that under sections 911(b) of the 954 Code, and 116(a) of the 1939 Code, income from a personal service partnership is included in the statutory definition of "earned income," i.e., "wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered." Hence, he says there is no need to take into account the partnership provisions of the 1939 Code, which are applicable to both years in suit.[1] Even if these provisions are taken into account, however, appellant asserts that the "conduit" principle, which generally requires a partner to include in his gross income his distributive share of different items of partnership income, deductions and credits, does not apply to this situation. These contentions are wholly different from the points raised in the court below, but since only a question of law is involved, we will proceed to consider them.

■ Although the first part of taxpayer's argument, that his distribution consisted of foreign earned income regardless of what the partnership provisions may say, is ingenious, we cannot accept it. We think it is impossible not to consider the partnership provisions of the statute in any case where the tax liability of a partner is at stake, without doing violence to the statutory scheme. Furthermore, the argument is inconsistent with the specific provisions of the articles of partnership. The partnership agreement gave appellant a right to 4.-0816% of the total net profits, and re-

---

1. Section 771 of the Internal Revenue Code provides that subchapter K will generally apply only to partnership taxable years beginning after December 31, 1954 and to any part of a partner's taxable year falling within such partnership taxable year.

quired him to sustain the same proportion of net losses. Thus, if the Saudi Arabian operations in which he was engaged sustained a loss, he would still have received a share of the profits if the rest of the business was profitable and the converse is also true. Whatever compensation he received depended on the overall operations of the firm. We think, therefore, that the mere facts that appellant performed services abroad and received income from the partnership do not entitle him to regard the distribution entirely as earned income from sources outside the United States.

■ Section 185 of the Internal Revenue Code of 1939 provided until 1943 that the earned income of partners was to be determined by reference to the partnership's earned income. Although this section was repealed, in connection with the repeal of the domestic earned income credit,[2] we think the rule it established is the natural way to interpret the foreign earned income exclusion in the partnership context.

■ What remains for decision is the second argument, that his exclusion should not be limited to the partnership's proportion of foreign earned income, but should comprise his entire partnership distribution. In other words, taxpayer asks us to reject the "conduit" approach to the taxation of partnership distributions, under which each partner's share of the net income is composed of a proportionate part of the various items on the partnership return, in favor of the "entity" approach, under which the distribution from the partnership is taken onto the return and treated as if taxpayer had earned it from individual employment. Since the entire amount of partnership income from abroad was earned income, and since taxpayer is entitled to an earned income exclusion, he claims that his entire distribution would thus be tax exempt.

The 1954 Code's partnership provisions are much more elaborate than the corresponding sections under the prior statute which we construe here. The only items of partnership income and loss which the 1939 Code specifically required a partner to take into account separately on his individual return were his shares of short and long term capital gains and losses, and the ordinary net income or loss of the partnership, computed as it would be in the case of an individual with minor exceptions. Consequently, the taxpayer's argument at first blush appears strong. But judicial decisions, including Neuberger v. Commissioner, 311 U.S. 83, 61 S.Ct. 97, 85 L.Ed. 58 (1940), rev'g 104 F.2d 649 (2 Cir. 1939), have permitted or required taxpayers to carry through many items of partnership income or loss to their individual returns, with the same character as they had in the hands of the partnership. In Neuberger, the Court held that under the Revenue Act of 1932, a partner might offset his individual losses on the sale of non-capital assets against his share of the partnership gains from the sale of non-capital assets. Before that decision, the 5th Circuit had held in Jennings v. Commissioner, 110 F.2d 945, cert. denied, 311 U.S. 704, 61 S.Ct. 169, 85 L.Ed. 457 (1940) that a partner might offset individual wagering losses against his distributive share of partnership wagering gains, and the Court of Claims in Craik v. United States, 31 F.Supp. 132, 90 Ct. Cl. 345 (1940), held that a non-resident alien who was a partner in a trading firm doing business in the United States and abroad was exempt from taxation on his distributive share of the partnership's net income from sources without the United States. See also Palda v. Commissioner, 253 F.2d 302 (8 Cir. 1958); Commissioner v. Paley, 232 F.2d 915 (9 Cir.), cert. denied 352 U.S. 838, 77 S.Ct. 59, 1 L.Ed.2d 56 (1956); Commissioner v. Ammann, 228 F.2d 417 (5 Cir. 1956); Benjamin v. Hoey, 139 F.2d 945 (2 Cir. 1944). Of course, the question always is whether Congressional intent would be best served by carrying through a particular item of partnership income, deduction or credit to the part-

2. See Revenue Act of 1943, ch. 63, § 107(a), 58 Stat. 31.

ner's individual return or treating it as simply part of the lump-sum distribution, and on occasion we have followed the "entity" concept. E.g., Commissioner v. Lamont, 156 F.2d 800 (2 Cir.), cert. denied, 329 U.S. 782, 67 S.Ct. 203, 91 L. Ed. 671 (1946); Commissioner v. Lehman, 165 F.2d 383 (2 Cir.), cert. denied, 334 U.S. 819, 68 S.Ct. 1085, 92 L.Ed. 1749 (1948). However, both these cases involved rather special circumstances.

The taxpayer argues that the most important distinction between the cases following the "conduit" principle and the present one is that "not one of them involved the determination of the earned income of a partner or of any other item of income with respect to which the individual partner's own status was important." We may accept this as true, but the conclusion pressed does not necessarily follow. A most important countervailing consideration is suggested by an example given by the Government. Suppose a four-man partnership, one partner located in New York, the other three in different cities abroad. Profits are shared equally among the four. Because the New York office has the largest staff of professional employees, the partnership earns 2.5 million dollars in the United States, and only 300,000 dollars abroad. Under the taxpayer's theory, each of the three non-resident partners may exclude his entire income of 700,000 dollars, even though the partnership's total foreign earned income is but 300,-000 dollars. Taxpayer answers this example only by saying that the result flows not from the statute, but from the Regulations provision that "the entire amount received as professional fees shall be treated as earned income if the taxpayer is engaged in a professional occupation * * * even though he employs assistants to perform part or all of the services, provided the patients or clients are those of the taxpayer and look to the taxpayer as the person responsible for the services rendered." Treas.Reg. 118, § 39.116–1(a) (4) (1953). As he recognizes, however, a provision of this type has been in the Regulations under the earned income sections since 1934, and we think it has virtually acquired the force of statute law.

In the last analysis, taxpayer cannot escape the implications of the fact that his income did not depend solely on his own services in a foreign country, but on the services rendered by his fellow partners and the employees of the partnership both in the United States and abroad. In order properly to reflect this, we think it necessary that his exclusion be limited to the proportion of the partnership's earned income from sources outside the United States.

The judgment is affirmed.