*Decision will be entered under Rule 50.*

THOMAS BROWNE FOSTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 89865. Filed August 27, 1964.

Peter J. George, for the petitioner.
John B. Murray, Jr., for the respondent.

ARUNDELL, Judge: Respondent determined a deficiency in income tax for the calendar year 1956 in the amount of $2,773.03. Petitioner alleges that instead of a deficiency he has overpaid his taxes for 1956 in the amount of $251.11.

One error is assigned as follows:

(a) The Commissioner determined that the petitioner's income from the Emerson Engineers, a partnership, was $14,115.06, and erroneously allocated $13,562.79 to income from domestic sources and $552.27 to income from foreign sources.

### FINDINGS OF FACT.

Some of the facts were stipulated and are so found.

Petitioner is an adult citizen of the United States and resides in New York, N.Y. He filed his Federal income tax return for the calendar year 1956 with the district director of internal revenue in Upper Manhattan, New York City, on April 11, 1957.

Petitioner became a nonresident of the United States on January 10, 1952, and remained a nonresident until July 29, 1956, being a nonresident for the required period mentioned in section 911(a)(2) of the Internal Revenue Code of 1954 of 510 days' duration in 18 consecutive months for the period ending July 29, 1956.

Petitioner became a partner of Emerson Engineers on December 1, 1950, and was a partner of Emerson Engineers during the entire taxable year 1956.

The method of accounting of the Emerson Engineers partnership was the accrual basis, and the accounting period was the fiscal year ending on November 30 of each year.

Paragraph Fourth of the partnership agreement provided that all profits and all losses shall be divided between and borne by the copartners in the following proportions.[1]

| Name of partner | Percent |
|---|---|
| Alonzo Flack | 30.6123 |
| Elmer C. Fremont, Sr | 24.4898 |
| Charles O'C. Sloane | 10.2041 |
| Alfred M. S. Strohm | 8.1633 |
| Elmer C. Fremont, Jr | 10.2041 |
| Roland B. Anderton, Sr | 4.0816 |
| Dana Devereux | 4.0816 |
| Thomas B. Foster | 4.0816 |
| John C. Martin, Jr | 4.0816 |
| Total percentage | 100.0000 |

[1] The exact language of the agreement, as far as petitioner is concerned, is as follows: "Fourth: All profits and losses shall be divided between and borne by the copartners in the following proportion, that is to say * * * THOMAS B. FOSTER shall be entitled to 4.0816 of the profits and shall bear 4.0816 of the losses * * *"

On October 6, 1951, the partnership agreement, dated December 1, 1950, was amended to read as follows:

TWELFTH: Each partner shall be entitled to a monthly drawing account, the amount of which shall be determined and fixed by the majority in interest of all the partners, and shall further be entitled to a distributive share of the ordinary net income based upon his percentage interest of the profits, after subtraction of drawing account.

Emerson Engineers were engineering management consultants of the Arabian American Oil Co. (hereinafter called Aramco) during the years 1952 through July 29, 1956.

Petitioner represented Emerson Engineers in Saudi Arabia during the period January 10, 1952, through July 29, 1956.

The only source of revenue for Emerson Engineers was fees from professional services rendered to various corporations throughout the world.

Paragraph Fifth of the partnership agreement provided: "FIFTH: The partners shall devote all their time and attention to the affairs of the copartnership."

On March 8, 1956, the managing partner of the partnership advised petitioner by letter that "Beginning April 1st, 1956, your monthly drawing will be raised from $750.00 per month to $800.00 per month."

Petitioner's income for the period beginning January 1, 1956, through July 29, 1956 (first period), and for the period beginning July 30, 1956, through December 31, 1956 (second period), was as follows:

| Item | First period | Second period | Total |
|---|---|---|---|
| Fixed drawings | $6,200.00 | $3,200.00 | $9,400.00 |
| Outside-of-the-country expenses | 608.06 | | 608.06 |
| Distributive share | 2,738.00 | 1,369.00 | 4,107.00 |
| Subtotal | 9,546.06 | 4,569.00 | 14,115.06 |
| Dividends | | 709.14 | 709.14 |
| Gain from capital assets | | 170.56 | 170.56 |
| Grand total | 9,546.06 | 5,448.70 | 14,994.76 |

The foreign income of the partnership for the year 1956 was in the sum of $18,538.70, all of which was received from Saudi Arabia, and this was for the services that petitioner rendered to Aramco.

The partnership's fee income from foreign services for the fiscal year ending November 30, 1956, was $18,538.70. The income from domestic sources of the partnership was $455,274.11, and the percentage of gross fees received from foreign sources is 3.9126 percent.

Petitioner reported on his 1956 individual Federal income tax return the amount of $4,869.02 as his distributive share of partnership income. The respondent determined that petitioner's total distributive share of partnership income was the previously mentioned sub-

total of $14,115.06; that 3.9126 percent of this latter amount, or $552.27, represented receipts from foreign sources which were excludable from gross income; and that the remainder, or $13,562.79, was received from sources within the United States and formed a part of petitioner's reportable distributive share of partnership gross income. In a statement attached to the deficiency notice, respondent explained the adjustment thus:

| Year | Income from U.S. sources per return | Income from U.S. sources corrected | Increase |
|---|---|---|---|
| 1956 | $4,869.02 | $13,562.79 | $8,693.77 |

Your contention that drawings constitute salaries under the existing partnership agreements is disallowed and the percentage of the total partnership income allocable to U.S. sources has been applied before the deduction of these drawings or salaries from distributable income.

### ULTIMATE FINDINGS OF FACT

Petitioner's monthly drawings received from his domestic partnership while he was a resident of Saudi Arabia during the months of January 1, 1956, to July 29, 1956, inclusive, are includable in his distributive share of partnership gross income.

Under the exclusion provisions of section 911(a) of the 1954 Code, petitioner is entitled to exclude from his gross income, as income earned from sources outside of the United States, $552.27, or 3.9126 percent of his distributive share of $14,115.06 of partnership gross income he received for the taxable year 1956.

### OPINION

The ultimate question is how much of the $14,115.06 of petitioner's income from the partnership during the calendar year 1956 is excludable from petitioner's income under section 911 of the Internal Revenue Code of 1954.[2] The respondent has excluded $552.27, or 3.9126 percent, of $14,115.06. While petitioner, in filing his return, in effect excluded $9,246.04 ($14,115.06 minus the $4,869.02 reported as income

---

[2] SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.

(a) GENERAL RULE.—The following items shall not be included in gross income and shall be exempt from taxation under this subtitle:

\* \* \* \* \* \* \*

(2) PRESENCE IN FOREIGN COUNTRY FOR 17 MONTHS.—In the case of an individual citizen of the United States, who during any period of 18 consecutive months is present in a foreign country or countries during at least 510 full days in such period, amounts received from sources without the United States \* \* \* if such amounts constitute earned income (as defined in subsection (b)) attributable to such period; \* \* \*

(b) DEFINITION OF EARNED INCOME.—For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered \* \* \*

from the partnership on his return), we do not understand that he now contends that any more than $7,093.95 [3] should be excluded.

This identical issue [4] involving the years 1953, 1954, and 1955 was tried before the U.S. District Court (S.D.N.Y.) in *Foster* v. *United States*, 221 F. Supp. 291 (1963), affd. 329 F. 2d 717 (C.A. 2, 1964). The District Court found that the statute of limitations had run for 1955 so only the years 1953 and 1954 were appealed to the Court of Appeals for the Second Circuit. Both courts found for the Government for 1953 and 1954.

In arguing his case before the District Court, petitioner claimed that his monthly receipts from the partnership were "guaranteed payments" within the meaning of section 707(c) of the 1954 Code.[5] In deciding against petitioner, the District Court, among other things, said:

The plaintiff claims that his monthly receipts were guaranteed payments within the meaning of Section 707(c), Int. Rev. Code of 1954. The touchstone for determining "guaranteed payments" is whether they are payable without regard to partnership income, Treas. Reg. § 1.707–1(c) (1956). There is no evidence to support any contention that the payments were to bear no relationship to partnership income. While associates and certain partners were paid the same amount, this appears to be only a matter of convenience. Under the partnership agreement, were there losses, the partners would be required to bear them. Absent the monthly drawing being guaranteed payments, the provisions of Section 911, Int. Rev. Code of 1954, permit an exclusion only for that portion of the plaintiff's total earnings which represent the partnership's income from sources without the United States. This the Commissioner has granted him.

There is no basis for any contention that the plaintiff was not acting in his capacity as partner in Saudi Arabia so as to render applicable Section 707(a), Int. Rev. Code of 1954.

Since the amounts received by Foster during the years 1953 and 1954 were, in fact, distributions of partnership income, he is not entitled to any refund.

---

[3] The amount of $7,093.95 would be computed as follows:

| | |
|---|---|
| Fixed drawings, first period | $6,200.00 |
| Outside-of-the-country expenses | 608.06 |
| 3.9126% of $7,307 ($4,107 + $3,200) | 285.89 |
| Total | 7,093.95 |

[4] Except that petitioner claimed under sec. 116(a), I.R.C. 1939, for 1953 and sec. 911 for 1954 and 1955 but the District Court said, "For present purposes, the statutes may be considered identical as they existed for these years * * *."

[5] SEC. 707. TRANSACTIONS BETWEEN PARTNER AND PARTNERSHIP.

(a) PARTNER NOT ACTING IN CAPACITY AS PARTNER.—If a partner engages in a transaction with a partnership other than in his capacity as a member of such partnership, the transaction shall, except as otherwise provided in this section, be considered as occurring between the partnership and one who is not a partner.

*      *      *      *      *      *      *

(c) GUARANTEED PAYMENTS.—To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and section 162(a) (relating to trade or business expenses).

Petitioner did not pursue the same argument before the Court of Appeals. At this point it should be noted that section 707, being a part of subchapter K of the 1954 Code, was not effective for any taxable year beginning before January 1, 1955.[6]

Upon appeal, petitioner argued that conceding that the entire amount received from the partnership was part of his distributive share, it was nevertheless wholly excludable from his gross income. He asserted that under sections 911(b) of the 1954 Code (applicable to 1954) and 116(a) of the 1939 Code (applicable to 1953), income from a personal service partnership was included in the statutory definition of "earned income," i.e., "wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered" and that there was no need to take into account the partnership provisions of the 1939 Code, applicable to both years. In rejecting this new argument, the Court of Appeals, among other things, said:

Although the first part of taxpayer's argument, that his distribution consisted of foreign earned income regardless of what the partnership provisions may say, is ingenious, we cannot accept it. We think it is impossible not to consider the partnership provisions of the statute in any case where the tax liability of a partner is at stake, without doing violence to the statutory scheme. Furthermore, the argument is inconsistent with the specific provisions of the articles of partnership. The partnership agreement gave appellant a right to 4.0816% of the total net profits, and required him to sustain the same proportion of net losses. Thus, if the Saudi Arabian operations in which he was engaged sustained a loss, he would still have received a share of the profits if the rest of the business was profitable and the converse is also true. Whatever compensation he received depended on the overall operations of the firm. We think, therefore, that the mere facts that appellant performed services abroad and received income from the partnership do not entitle him to regard the distribution entirely as earned income from sources outside the United States.

\*     \*     \*     \*     \*     \*     \*

In the last analysis, taxpayer cannot escape the implications of the fact that his income did not depend solely on his own services in a foreign country, but on the services rendered by his fellow partners and the employees of the partnership both in the United States and abroad. In order properly to reflect this, *we think it necessary that his exclusion be limited to the proportion of the partnership's earned income from sources outside the United States.* [Emphasis supplied.]

This "proportion" for 1956 is the previously mentioned amount of $552.27 which is 3.9126 percent of petitioner's total income of $14,-115.06 from the partnership for 1956.

In the instant case now before us for 1956, petitioner has returned to the argument he made before the District Court to the effect that his monthly receipts from the partnership were "guaranteed payments" within the meaning of section 707(c), *supra*. He now argues that since section 707 had no application to any year prior to January

---

[6] See sec. 771 of the 1954 Code dealing with the effective date for subchapter K.

1, 1955, whatever the District Court said about section 707 would not be controlling and since the Court of Appeals did not consider section 707 on its merits, "the argument here presented is one of original impression." He also relies upon our decision in *F. A. Falconer*, 40 T.C. 1011, as supporting his contention that the monthly receipts from the partnership were "guaranteed payments" within the meaning of section 707(c), *supra*.

While it is probably true that the opinion of the District Court concerning the application of section 707 should, under the circumstances, be considered to be in the nature of obiter dictum, yet we are in agreement with what the court has said. Petitioner definitely was a *partner* of Emerson Engineers and while in Saudi Arabia acted in no other capacity. If petitioner were correct in his present argument, he would have to be considered under the very language of section 707(c) as "one who is not a member of the partnership" which would be inconsistent with the facts of the case and with the partnership agreement. Under paragraph fifth of the partnership agreement, petitioner had agreed to devote "all" of his "time and attention to the affairs of the copartnership." Petitioner received no payments from Aramco. All of his $14,115.06 of income in 1956 came direct from the partnership. Aramco paid the partnership $18,538.70 for the services that were rendered to it. Under these facts we think it must follow that petitioner's exclusion be, as the Court of Appeals said, "limited to the proportion of the partnership's earned income from sources outside the United States" which is $552.27, the amount allowed by the respondent.

We see nothing in the *Falconer* case, that would require a different result. No exclusion from income under section 911 of the 1954 Code was involved in the *Falconer* case. We held in that case that certain amounts received by the taxpayer were "guaranteed payments" under section 707(c) and were taxable as income to the taxpayer under section 61(a)(1) of the 1954 Code. It should be noted that section 707(c), providing that guaranteed payments made to a partner for services shall be considered as made to one who is not a member of the partnership, shall be so considered "*only for the purposes* of section 61(a) (relating to gross income) and section 162(a) (relating to trade or business expenses)." (Emphasis supplied.) Section 1.707–1(c) of the Income Tax Regulations provides that "For the purposes of other provisions of the internal revenue laws, guaranteed payments are regarded as a partner's distributive share of ordinary income." We agree with these regulations.

We sustain the respondent's determination.

*Decision will be entered for the respondent.*