ANDREW O. MILLER, Jr., AND JEANNE W. MILLER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3228–66. Filed August 6, 1969.

*David Sachs*, for the petitioners.

*Lawrence J. Shongut* and *Howard L. Gleit*, for the respondent.

**OPINION**

The petitioner received $135,293.20 from White & Case attributable to the period when he was in charge of the firm's Paris office. The issue for decision is how much of this sum is excludable from the petitioners' gross income pursuant to section 911.

As applicable to the years in issue, section 911(a) provides [3] that, in the case of a U.S. citizen meeting certain foreign residence or presence requirements,

The following items shall not be included in gross income and shall be exempt from taxation under this subtitle:

(1) * * * amounts received from sources without the United States * * * if such amounts constitute earned income * * * attributable to such period; * * *

Earned income is defined in section 911(b) [4] as meaning "wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered." Section 862(a)(3) provides that "compensation for labor or personal services performed without the United States" shall be treated as income from sources without the United States.

The respondent makes no distinction between the payments which the petitioner received under the letter agreement and those which he received as his distributive share of the partnership profits. He takes the position that all such payments should be treated alike and that they are excludable only to the extent that they represent the petitioner's share of the firm's income from sources outside the United States.

Although the petitioners have alleged in their pleadings that all income from White & Case is excludable under section 911, they have not seriously urged us to hold that the distributive share is totally excludable. In *Foster* v. *United States*, 329 F. 2d 717 (C.A. 2, 1964), the Court of Appeals for the Second Circuit held that a partner who performed services outside the United States was not entitled to treat his entire share of partnership profits as earned income under section

[3] Sec. 911 was amended by sec. 11(a) of the Revenue Act of 1962, 76 Stat. 961.
[4] *Ibid.*

911; he was limited to excluding that portion of his distributive share which the net income of the partnership from *sources outside* the United States bore to the total income of the partnership. This decision was followed by this Court in *Thomas Browne Foster*, 42 T.C. 974 (1964). Since an appeal of our decision in this case would likely go to the Second Circuit, the petitioners in effect concede that our decision should follow the holding of that circuit. They have indicated that they may request the Court of Appeals to reconsider its decision, but they have not requested us to do so. Accordingly, we hold that the petitioner's distributive share of the White & Case profits is excludable only to the extent that it represents his share of the firm's income from sources outside the United States.

The question remaining for decision is whether the payments received by the petitioner under the letter agreement are totally excludable or whether their excludability is limited in the same manner as the petitioner's distributive share. The petitioners contend that such payments are guaranteed payments within the meaning of section 707(c); that accordingly, such payments are treated as compensation for services; and that since the services of the petitioner were performed outside the United States, such payments are entirely excludable under section 911.

In the first place, the respondent maintains that the payments made pursuant to the letter agreement were not guaranteed payments within the meaning of section 707(c). Section 707(c) provides:

(c) GUARANTEED PAYMENTS.—To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and section 162(a) (relating to trade or business expenses).

In support of his position, the respondent points to the facts that the partnership had a long history of profitable operation, that the agreement was not bargained for by the petitioner but was unilaterally offered by White & Case, and that the payments were guaranteed for the admitted purpose of qualifying them for exemption under sections 707(c) and 911. The respondent argues that whether the payments were guaranteed depends upon the substance of the transaction (sec. 1.707-1(a), Income Tax Regs.; *F. A. Falconer*, 40 T.C. 1011 (1963)) and that in this case, the guarantee provisions lacked substance.

We do not agree with the respondent's position. In connection with the enactment of the partnership provisions of the Internal Revenue Code of 1954, the committee reports stated:

The existing tax treatment of partners and partnerships is among the most confused in the entire income tax field. The present statutory provisions are wholly inadequate. The published regulations, rulings, and court decisions are incomplete

and frequently contradictory. As a result partners today cannot form, operate, or dissolve a partnership with any assurance as to tax consequences. [H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 65 (1954) ; S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 89 (1954).]

One of the troublesome problems under the former law was the treatment of compensation paid to a partner. On the basis of the aggregate theory of partnerships, compensation for a partner's services was treated as part of his distributive share of partnership profits or losses. Accordingly, if partnership profits were sufficiently large, the compensation was treated as a distributive share of profits. *Estate of S. U. Tilton et al.*, 8 B.T.A. 914 (1927). However, to the extent that partnership profits were insufficient to cover amounts paid as compensation, the compensation was treated as being paid from each partner's capital. To the extent a partner's compensation was treated as a return of his own capital, there was no tax. However, to the extent he was treated as receiving compensation from the capital of his fellow partners, he was considered to receive taxable income. *Augustine M. Lloyd*, 15 B.T.A. 82 (1929). Congress found this treatment to be "unrealistic and unnecessarily complicated." H. Rept. No. 1337, *supra* at 68; S. Rept. No. 1622, *supra* at 92.

The enactment of section 707(c) and this legislative history make clear that Congress intended to permit partners to arrange for the payment of compensation to a partner and to give effect to such arrangement in computing the tax liability of the partners. Of course, for the arrangement to be treated as the payment of compensation, it must in form and in substance meet the conditions of section 707(c). Although in this case the payments were guaranteed to secure the tax benefits of section 911, that fact does not necessarily disqualify them as guaranteed payments; the fact that the petitioner sought a tax benefit does not of itself prevent his achieving it. Nor do the payments fail to qualify as guaranteed payments by reason of the fact that White & Case had a long history of profitable operations and was likely to have sufficient profits out of which to make the guaranteed payments. If the payments were disqualified for these reasons, no profitable partnership could rely on the effectiveness of its arrangements for the payment of guaranteed payments under section 707(c). Such a result would be a severe blow to the certainty and predictability which Congress sought to achieve by the enactment of the partnership provisions.

Whether the payments do qualify as guaranteed payments depends upon what relationships were in fact created. As a result of the letter agreement, the partnership was obligated to pay the petitioner $20,000 a year so long as he continued to manage the Paris office. He thereby acquired a right to such payments, which was not subject to the for-

tunes of the partnership generally, in contrast to the rights of other partners to receive distributions from the partnership. In addition, the petitioner had a right to receive a larger amount than the withdrawal accounts provided for other partners. Despite the profitability of the partnership and the likelihood that the petitioner could be paid the $20,000 out of profits of the partnership, we believe that the guarantee had some significance, and accordingly, we find that the payments were guaranteed payments within the meaning of section 707(c).

Next, the respondent takes the position that even if the payments under the letter agreement are guaranteed payments, they are not totally excludable under section 911. He contends that for purposes of section 911, the guaranteed payments must be treated as payments of a distributive share of partnership income; as such, they do not constitute earned income received from foreign sources under section 911 except to the extent that they represent the petitioner's share of the partnership's foreign source income. *Foster* v. *United States, supra; Thomas Browne Foster, supra.* On the other hand, the petitioners contend that the guaranteed payments fully meet the requirements of section 911 since they constitute compensation for services performed outside the United States.

In order to qualify for the section 911 exclusion, a taxpayer must establish that the income sought to be excluded constitutes earned income as defined in section 911 and is received from foreign sources. Under section 862, the source of compensation is determined by the place where the services are performed, and accordingly, since the petitioner's services between June of 1960 and June of 1962 were performed outside the United States, any compensation for such services is considered amounts received from sources without the United States. See sec. 1.861-4(a), Income Tax Regs.; *Herman A. Kollmar,* 4 T.C. 727, 731 (1945). For purposes of the source rules, the fact that the payments were made from New York and that they may have been made out of income earned in the United States are immaterial. Thus, in determining whether the guaranteed payments meet the source requirements, the sole question is whether they are to be treated as compensation for services. If they are so treated, they also meet the definition of earned income in section 911 as "amounts received as compensation for personal services actually rendered."

The taxability of the guaranteed payments, accordingly, turns on the meaning of the phrase "but only for the purposes of section 61(a) (relating to gross income) and section 162(a) (relating to trade or business expenses)" in section 707(c). On the basis of this language, the respondent argues that section 707(c) makes the guaranteed payments compensation only for purposes of sections 61 and 162—not for any other purpose. According to his view, section 707(c) was designed

merely to reverse the tax treatment of guaranteed payments established in *Augustine M. Lloyd, supra,* and the only effects of the provision are that the partner receiving the guaranteed payments is taxable on them as compensation and that the partnership is allowed a deduction for the payment of compensation. On the other hand, the petitioners point out that section 61 provides *"Except as otherwise provided in this subtitle,* gross income means all income from whatever source derived." (Emphasis added.) Therefore, they argue that the reference to section 61 in section 707(c) includes the exceptions otherwise provided in the Internal Revenue Code. These different readings of the statute can only be resolved by an examination of the objectives of the provisions.

In describing the reasons for the enactment of section 707, the committee reports indicate that the general approach of the section is to apply the entity theory to the dealings between partners and the partnership. H. Rept. No. 1337, *supra* at 67; S. Rept. No. 1622, *supra* at 92. Clearly, section 707(c) makes a guaranteed payment taxable to a partner as compensation, and the committee reports indicate that such payments are not to be treated as a part of his distributive share of the partnership profits. Section 707 includes some express exceptions to the application of the entity theory to transactions involving partners and the partnership. In addition, the conference committee report states:

No inference is intended, however, that a partnership is to be considered as a separate entity for the purpose of applying other provisions of the internal revenue laws if the concept of the partnership as a collection of individuals is more appropriate for such provisions. * * * [Conf. Rept. No. 2543, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 59 (1954).]

For purposes of section 911, we perceive no reason for not applying the entity theory.

The predecessor of section 911(a) was enacted as section 213(b)(14) of the Revenue Act of 1926. The legislative history of this provision indicates that its purpose was to increase foreign trade by removing tax disadvantages of U.S. citizens working abroad. H. Rept. No. 1, 69th Cong., 1st Sess. (1925), 1939-1 C.B. (Part 2) 315, 320; Hearings before House Committee on Ways and Means on H.R. 1, 69th Cong., 1st Sess., p. 182 (1925). See also S. Rept. No. 781, to accompany H.R. 4473 (Pub. L. 183), 82d Cong., 1st Sess., p. 52–53 (1951). If the petitioner had served as an employee of White & Case while working in Paris, his compensation would have been excludable under section 911. The petitioner seems to be as entitled to tax relief under section 911 as an employee. 74 Yale L.J. 956, 958 (1965). He was subject to the same French taxes and extra expenses as an employee. The guaranteed payments were received from the law firm as a reward for the services which he rendered the firm, and clearly they were not excessive com-

pensation. Although the distributive share which the petitioner received constituted a share of the entire profits of the partnership and may be considered as more than mere compensation for his services performed in Paris, the guaranteed payments constitute only compensation for his services. Compare *Foster* v. *United States, supra.*

In our opinion, treating the guaranteed payments as compensation for purposes of section 911 carries out the purposes of both that section and section 707(c). Since section 707(c) makes such payments taxable as compensation, it seems reasonable to conclude that other provisions relating to the tax treatment of such compensation are also applicable.

This conclusion does not ignore the effect of the "but only" words. These words were added to section 707(c) by the Senate which at the same time also amended section 706 to provide that guaranteed payments received by a partner are to be included in his income for his taxable year in which the partnership's taxable year ends. In connection with section 707(c), the Senate committee report indicates that the reason for the change was to provide that guaranteed payments are to be included in income at the same time as a partner's distributive share—not at the time when compensation would ordinarily be included in income. This is the only example in the legislative history of the need for the "but only" words.

Another reason for our conclusion is that if we adopted the respondent's position, we would perpetuate many of the complexities and problems that Congress sought to eliminate by the enactment of section 707(c). These difficulties would arise in determining how to treat the guaranteed payments received by a partner who performs his services outside the United States when the partnership has insufficient profits out of which to make the guaranteed payments. As a result of section 707(c), all of such payments would be taxable as compensation except to the extent that they are excludable under section 911. If the guaranteed payments are treated as a distributive share for purposes of section 911, it would then be necessary to apply the holding of *Augustine M. Lloyd, supra,* and to determine what portion of the payments should be considered as compensation paid by the other partners. We would then have to decide whether all of the payments attributable to the other partners should be treated as foreign-source compensation, or whether they should be allocated in some other manner. It is clear that when Congress enacted section 707(c), one of its purposes was to eliminate such problems, and it appears to us that to hold that the guaranteed payments are to be treated as a distributive share for purposes of section 911 frustrates that legislative purpose.

The respondent's regulations adopt the rule that section 707(c) does not make a partner who is receiving guaranteed payments an employee for purposes of the sick-pay exclusion of section 105(d), for purposes of income tax withholding on wages, or for purposes of the rules relating to qualified pension and profit-sharing plans. However, in *Armstrong* v. *Phinney*, 394 F. 2d 661 (C.A. 5, 1968), the Court of Appeals for the Fifth Circuit stated that under section 707(c), a partner may be treated as an employee of the partnership who is entitled to exclude the value of meals and lodging under section 119. In holding that the petitioner's guaranteed payments qualify for the exclusion under section 911, we are not passing on the validity of these provisions of the regulations, nor commenting on the holding of the Fifth Circuit in *Armstrong*. We are merely holding that the guaranteed payments are to be treated as compensation for purposes of section 911; we are not holding that the petitioner was an employee of White & Case for purposes of other provisions of the Internal Revenue Code.

We are aware that this Court, in *Thomas Browne Foster, supra*, expressed the view that guaranteed payments should be treated as a distributive share for purposes of section 911. However, such view was clearly dicta in that case, and for the reasons already expressed, we have concluded that guaranteed payments within the meaning of section 707(c) received from sources without the United States should qualify for the exclusion under section 911.

For the years in issue,[5] there was no limitation on the amount of the earned income excludable by a bona fide resident of a foreign country whose residency included an entire taxable year. Sec. 911(a)(1). On the other hand, if a taxpayer was not a bona fide resident of a foreign country, but was, during any period of 18 consecutive months, present in a foreign country or countries for at least 510 full days, he was subject to a maximum earned income exclusion of $20,000 a year. Sec. 911(a)(2). If the 18-month period did not include the entire taxable year, the exclusion was further limited to the amount which bore the same ratio to $20,000 as the number of days of the taxable year within the 18-month period bore to the total number of days in the taxable year. Since we have held that the guaranteed payments received by the petitioner are subject to the exclusion of section 911, and since the petitioner may also exclude a portion of the distributive share that he received for the years 1961 and 1962, we must decide whether he qualifies for the unlimited exclusion as a bona fide resident of France.[6]

---

[5] See fn. 3, p. 757, *supra*.

[6] The petitioner received earned income from sources outside the United States of $20,727.23 in 1961 and $10,184.66 in 1962. It appears that these amounts may not be entirely excludable under sec. 911(a)(2).

We have set forth the facts relevant to this issue in our Findings of Fact, and we think they establish that the petitioner was a bona fide resident of France. *Richard W. Benfer*, 45 T.C. 277, 292–293 (1965).

The petitioner, whose assignment was not one which would take a specific period of time to accomplish, agreed to remain as managing partner of the Paris office for at least 2 years. Although he planned to return to the United States eventually, the evidence indicates that he intended to stay in Paris indefinitely. The taxpayers established a home in Paris which was the residence of three of their school-age children. Their two other children were in a United States boarding school when the petitioner left the United States. These children continued their education in the United States and spent their vacations with the petitioners abroad. The petitioners' social and cultural lives were firmly tied up with France rather than the United States. The petitioner paid French income taxes and was regarded by the French Government as a resident alien working in France. For these reasons, we hold the petitioner was a bona fide resident of France and is therefore entitled to exclude his entire earned income from sources without the United States for the years 1960, 1961, and 1962.

Reviewed by the Court.

*Decision will be entered under Rule 50.*