JACK C. SMITH; LOIS C. SMITH, and ANITA D. SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 4721-77.
United States Tax Court
T.C. Memo 1980-326; 1980 Tax Ct. Memo LEXIS 256; 40 T.C.M. (CCH) 1025; T.C.M. (RIA) 80326; August 20, 1980, Filed Jack C. Smith, Lois Smith, and Anita D. Smith, pro se. Brad S. Ostroff, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined *257 deficiencies in petitioners' Federal income tax for the taxable year 1973 as follows: Petitioner
Deficiency
Jack C. Smith
$1,616.24
Lois C. Smith and
Anita D. Smith
1,163.77
Concessions having been made, the issues remaining for decision are: (1) whether weekly payments made to petitioners during 1973 from a partnership in which they were partners constitute "guaranteed payments" as defined in section 707(c); [1] and (2) what is the correct amount of long-term capital gain realized by the petitioners on sale of their partnership interests in 1973. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner Jack C. Smith is the son of petitioners Lois C. and Anita D. Smith, who are husband and wife.Petitioners resided in Tucson, Arizona, at the time the petition herein was filed. Jack C. Smith filed an individual return and Lois C. and Anita D. Smith filed a joint return for 1973 with the office of the Internal Revenue Service at Phoenix, Arizona. Anita D. Smith is *258 a party to this proceeding solely by virtue of having filed a joint income tax return with her husband; consequently, Jack C. and Lois C. Smith will hereinafter be referred to as petitioners. Prior to 1972 petitioners were employed at Reynolds Aluminum Company (Reynolds). They became friends of two other Reynolds employees, Kenneth A. Page (Page) and Jimmy E. Weir (Weir). Weir and Page had been moonlighting, manufacturing and selling auxiliary gas tanks, trailer hitches and step bumpers for cars and pickup trucks. They were partners doing business as Quality Bumper Company. Weir and Page convinced petitioners to become their partners in a new partnership, similar to Quality Bumper Company, in Tucson, Arizona. On November 30, 1971, Weir and Page and the petitioners entered into a partnership agreement to do business as Arizona Tank Company (Arizona Tank). The partnership agreement provided in pertinent part: PARTNERSHIP AGREEMENT OF ARIZONA TANK COMPANY This Agreement of Partnership made and entered into this 30th day of November, 1971, between LOIS CLIFFORD SMITH, husband of Anita Doris Smith, JACK CLIFFORD SMITH, a single man, KENNETH A. PAGE, husband of Beverly J. Page, *259 and JIMMY E. WEIR, husband of LaVerne A. Weir, hereinafter referred to by name. WITNESSETH: That the parties hereto having mutual confidence in each other and for and in consideration of the mutual covenants and promises do hereby enter into this Partnership Agreement on the following terms and conditions: IV.Partnership Contributions
a. The capital contribution to be paid to the partnership is set forth below: LOIS CLIFFORD SMITH
$2,000.00
JACK CLIFFORD SMITH
$2,000.00
b. In lieu of capital contribution, partners WEIR and PAGE agree to contribute their knowledge, skill and experience and agree to instruct, counsel, advise and train partners SMITHS in working for, carrying on, and conducting business for which the partnership is formed. In addition, partners WEIR and PAGE agree to supply the partnership at their cost with bumpers, auxiliary tanks, hitches and other items necessary in the conduct of the business which WEIR and PAGE are able to purchase at cost. * * * V. Rights, Duties and Liabilities of Partners
a. Partners SMITHS will, at all times during the continuance of the partnership, diligently employ themselves and devote their *260 full time and efforts in the business of the partnership and in carrying on same for the greatest advantage to its interests. Each and every-one of the partners shall apply, to the best of his ability, all of his experience, training and talents in the performance of his respective duties as may be required in the furtherance of the business of the partnership. VI. Management of Business
a. All partners have equal rights in the management and conduct of the partnership business except as otherwise provided in this Agreement. Unless indicated herein to the contrary, all decisions to be made for and on behalf of the partnership and affecting the business and operations of said partnership shall require the approval of three of the four partners. e. The partnership will indemnify each partner and in respect of payments made and personal liabilities reasonable incurred by each partner in the ordinary and proper conduct of partnership business or for the preservation of its business or property. VII. Profits, Losses and Withdrawals
a. The partners shall be entitled to the net profits arising from the operation of the partnership business that remains after the *261 payment of the expenses of conducting the business of the partnership and shall be liable for any losses of the partnership. Each partner shall be entitled to a share of the profits and shall be liable for losses as specified below: LOIS CLIFFORD SMITH - 25% JACK CLIFFORD SMITH - 25% KENNETH A. PAGE - 25% Jimmy E. Weir - 25% b. Partners SMITHS shall each have the right to draw out of the said business the sum of $150.00 weekly which shall not be chargeable against their share of the profits but shall be for services rendered in their devotion of full time efforts to the business of the partnership. The amount of weekly withdrawal by partners SMITHS shall be reviewed periodically and upon a vote of three of the four partners this amount may be increased or decreased. c.In the event any partner fails to perform his duties under the Partnership Agreement, then he shall lose his right to any weekly salary draw during such time as he is not carrying out his partnership duties. * * * /S/ Lois Clifford Smith / LOIS CLIFFORD SMITH /S/ Jack Clifford Smith / JACK CLIFFORD SMITH /S/ Kenneth A. Page / KENNETH A. PAGE /S/ Jimmy E. Weir / JIMMY E. WEIR Pursuant to the partnership *262 agreement petitioners devoted 100 percent of their working efforts to Arizona Tank's business. During 1972 and 1973 each petitioner received, as payment therefor, $150 per week as a "salary draw." Petitioner Jack C. Smith received more payments than did petitioner Lois C. Smith in 1972 because the former worked for the partnership more weeks than his father during that year. [2] During 1973 the aggregate of weekly payments to each petitioner was $5,130. [3] These payments were not charged against the petitioners' capital accounts, but instead were deducted from the partnership's net income. Partners Weir and Page did not perform physical labor for Arizona Tank, nor did they receive weekly payments similar to those received by petitioners. Petitioners have not reported any of these payments on their Federal income tax returns for 1973. *263 On August 24, 1973, petitioners sold their respective interests in Arizona Tank to Page and Weir for a total of $20,000. The petitioners each reported a $6,700 long-term capital gain on Schedule D attachments to their respective 1973 Federal income tax returns. Respondent has determined that the payments received by petitioners from the Arizona Tank partnership in 1973 were "guaranteed payments," within the meaning of section 707(c), and were thus includable in petitioners' gross income. Additionally respondent maintains that the petitioners each realized long-term capital gains of $8,883.46 on the sale of their partnership interests in 1973, rather than the $6,700 reported on their tax returns for that year. OPINION Petitioners maintain that the payments from the Arizona Tank partnership for 1973 were "draws" and thus not taxable income. To the contrary, respondent asserts that they were "guaranteed payments" as defined in section 707(c).[4] If the payments come within the ambit of section 707(c) they are includable in petitioners' gross income under section 61(a)(1). They will also be deductible from the partnership's gross income, assuming that they qualify under section *264 162(a) as ordinary and necessary business expenses. Cagle v. Commissioner,539 F. 2d 409 (5th Cir. 1976). The touchstone for determining whether payments from a partnership to its partner are "guaranteed payments" is that they be "determined, without regard to the income of the partnership." Sec. 707(c); Falconer v. Commissioner,40 T.C. 1011 (1963). The language of section 707(c) and its legislative history clearly indicate that the characterization of payments as "guaranteed payments" is not elective. See S. Rept. No. 1622, 83 Cong., 2d Sess. 387 (1954). It is the substance of the payment, not its form, which governs. Falconer v. Commissioner,supra.The facts of the instant case clearly demonstrate *265 that the payments made to petitioners in 1973 were so-called "guaranteed payments." The partnership agreement termed the remuneration of petitioners variously as a "draw," "weekly withdrawal" and "weekly salary draw." In fact, however, it provided that these amounts were "for services rendered," which would "not be chargeable against their share of the profits." If any partner did not work for the partnership he would lose his right to any funds for that period other than his right to share in profits. Petitioners admit that Jack C. Smith received more payments in 1972 because he worked more weeks than did his father.Also, it is persuasive evidence that Arizona Tank deducted the payments to petitioners from its gross income. Such deductions would be totally improper had the payments been in fact "draws." There is no question that petitioners honestly believed that the payments which they received were to be tax-free, and we are sympathetic, but the facts and the law clearly establish that the payments are taxable as "guaranteed payments." We now turn to the issue of the correct amount of the long-term capital gain realized by petitioners on the sale of their partnership interests *266 in 1973. Respondent has determined that each petitioner realized long-term capital gains of $8,883.46, and not $6,700 as they reported on their tax returns for that year. Petitioner has the burden to prove that respondent's determination is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rockwell v. Commissioner,512 F. 2d 882 (9th Cir. 1975); Rule 142(a), Tax Court Rules of Practice and Procedure.
At trial petitioners offered no evidence to rebut respondent's adjustments for long-term capital gains. Nor did they present any real argument of this point on brief. Thus, due to petitioners' failure to meet their burden, we have no choice but to sustain respondent's determination that petitioners each realized long-term capital gains of $8,883.46 on the sale of their partnership interests in 1973. In light of the foregoing, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue.↩
2. Petitioners also did not report the 1972 payments as income on their Federal income tax returns for that year. Respondent, however, has not asserted a similar deficiency for 1972 due to the running of the statute of limitations for assessment of taxes for 1972. ↩
3. Due to an error on the part of the Internal Revenue Service, the statutory notices of deficiency include only $5,100 in each of the petitioner's incomes for 1973, instead of $5,130. The respondent has agreed to be bound by the smaller figure.↩
4. SEC. 707. TRANSACTIONS BETWEEN PARTNER AND PARTNERSHIP. (c) Guaranteed Payments.--To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and section 162(a) (relating to trade or business expenses).↩