DAVID B. GRUBB AND LINDA M. SOTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Grubb v. Commissioner
Docket No. 29682-88
United States Tax Court
T.C. Memo 1990-425; 1990 Tax Ct. Memo LEXIS 442; 60 T.C.M. (CCH) 458; T.C.M. (RIA) 90425; August 7, 1990, Filed *442 Decision will be entered for the respondent. Robert E. Lawson, for the petitioners. William D. Reese, for the respondent. COUVILLION, Special Trial Judge. COUVILLION
MEMORANDUM FINDINGS OF FACT AND OPINION This case was assigned pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986. [1]
Respondent determined a deficiency of $ 7,090.92 in petitioners' 1985 Federal income tax, the addition to tax for negligence under section 6653(a)(1) and (2) of $ 354.55 and 50 percent of the interest due on $ 7,090.92, respectively, and the addition to tax for substantial understatement of income tax under section 6661(a). The issues for decision are: (1) Whether payments by a partnership to a partner were either distributions under section 731(a), compensation for services rendered under section 707(c), or loans by the partnership to the partner; (2) if the payments were compensation for services rendered, whether such payments constituted self-employment *443 income under section 1401(a); and (3) the additions to tax. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and annexed exhibits are incorporated by reference. At the time the petition was filed, petitioners were residents of Milpitas, California. During 1984, David B. Grubb (petitioner), John Zahornacky, and David Uriu formed a partnership, Sumo Systems, to engage in the business of supplying peripheral memory storage devices to computer dealers and distributors. No written partnership agreement was executed and no capital contributions of either money or property were made by the partners. The partners agreed to perform services for the partnership in exchange for their respective partnership interests. Petitioner was allotted a 5-percent capital interest in the partnership. The sole capacity in which petitioner served the partnership was that of a salesperson. This position was his full-time employment during 1985. He had no technical expertise in the computer field; however, the other two partners were engineers, handled the technical and managerial aspects of the business, and were apparently the driving force behind the partnership. *444 Mr. Zahornacky's wife, Tammy, worked part time as the bookkeeper for the partnership and was admitted as a partner during 1985. When the partnership was established, it was agreed that petitioner would perform sales services for the partnership and that he would be paid approximately $ 1,600 per month. Petitioner contended that this was the "net take-home" amount that he needed to cover his living expenses. From January 1985 through March 1985, petitioner was issued biweekly checks by Sumo Systems in the amount of $ 725 each, thereafter the amount being $ 800. The biweekly checks refer to the payments as petitioner's "draw." Petitioner also received monthly commissions from the partnership in comparatively smaller amounts and was reimbursed for certain expenses. Respondent received a Form 1099 reporting that a total amount of $ 19,118 had been paid to petitioner during 1985 by Sumo Systems. Petitioner did not report this amount on his 1985 tax return as income from Sumo Systems. Sumo Systems employed another individual as a salesperson on a full-time basis for approximately nine months during 1985. She received a $ 750 biweekly salary and commissions which were in relatively *445 smaller amounts, and was reimbursed for certain expenses. The biweekly checks from Sumo Systems also referred to each payment as a "draw," similar to the checks issued to petitioner. This other salesperson, however, was not a partner in Sumo Systems. Late in 1985, petitioner and the other partners came to an agreement that petitioner would withdraw from the partnership but would continue to work as a salesman. After his withdrawal, petitioner continued to be paid in exactly the same manner as he had been as a partner, and the checks issued to him by Sumo Systems continued to refer to the biweekly payments as draws. No capital transactions occurred between petitioner and Sumo Systems or the other partners when he withdrew; petitioner merely ceased to be a partner. For the year 1985, it was agreed that the distributive shares of profits and losses of the partnership would be allocated 49 percent each to Mr. Zahornacky and Mr. Uriu, 2 percent to Mrs. Zahornacky, and zero to petitioner. These percentages were reflected on the Schedules K-1 issued by Sumo Systems for 1985 as part of its Form 1065, U.S. Partnership Return of Income. Accordingly, petitioner's Schedule K-1 for 1985 reflected *446 profit, loss, and capital percentages of zero as of the end of 1985. Also reflected on the Schedules K-1 were the "withdrawals and distributions" of each partner during 1985. The amounts of $ 32,825, $ 21,630, and zero, respectively, were reported as the withdrawals during 1985 for Mr. Zahornacky, Mr. Uriu, and Mrs. Zahornacky. Petitioner's Schedule K-1 reflected zero withdrawals and distributions during 1985. In its Form 1065 partnership information return for 1985, Sumo Systems reported ordinary income of $ 343,306. Subsequently, an amended Form 1065 partnership information return was filed which reported only $ 14,179 ordinary income instead of $ 343,306. In neither of the returns did the partnership report any item of income other than ordinary income from operations, and no items of loss were reported on either Form 1065. Respondent has not adjusted the partnership information returns nor has respondent challenged the partnership's allocation of partnership items as reflected on the Schedules K-1. Petitioner testified that the biweekly payments to him were draws against his capital account; that the other partners agreed that the payments would be considered partnership draws; *447 that the oral withdrawal agreement provided that he was not to be allocated any income, as was reflected on the Schedules K-1; and that the allocation of income to the other partners would include the payments made to him; therefore, the payments to him were not taxable. Mr. Zahornacky denied the existence of an agreement as to whether the payments to petitioner would be taxable, but he confirmed the agreement not to allocate any partnership items to petitioner for 1985. Mr. Uriu stated only that the payments to petitioner were to be considered draws. Mrs. Zahornacky, Sumo System's bookkeeper, understood that, under the partners' agreement, the payments to petitioner would not be deducted as an expense by the partnership and, to the best of her knowledge, such amounts had not been deducted. She further testified that the biweekly payments to petitioner were recorded on the partnership books as draws against his capital account, although this testimony is not corroborated by the Schedule K-1 issued to petitioner, which reflected zero withdrawals and distributions out of his capital account. Sumo Systems enlisted the services of an accountant for preparation of its Form 1065 partnership *448 information return for 1985. The foregoing arrangements were explained to the accountant, who then prepared the Form 1099 relating to the payments to petitioner, as well as the original and amended information returns. OPINION In the notice of deficiency, respondent determined that the payments to petitioner totaling $ 19,118 constituted guaranteed payments taxable as ordinary income under section 707(c) and subject to self-employment tax under section 1401(a). In the petition, petitioner alleges that "petitioner received net compensation for services from Sumo Systems in the approximate amount of $ 19,118.00 in 1985," and that "petitioner's employer, Sumo Systems, withheld or should have withheld and paid over to the Internal Revenue Service Federal income taxes in an amount which would result in Petitioner receiving $ 19,118.00 net compensation." At trial, however, and in his opening brief, petitioner argues that the payments were not compensation because the partnership did not deduct the payments as an expense on its books and records; that the payments were not distributions of his distributive share of income because zero profits and losses were allocated to him for 1985; therefore, *449 the payments were necessarily loans by the partnership. Alternatively, petitioner argued that, if the payments were not loans, the payments were distributions taxable under section 731(a); therefore, to the extent the distributions exceeded petitioner's adjusted basis in his partnership interest, he conceded the payments as taxable capital gain. First, petitioner's argument that the payments constituted loans because "petitioner has received the money and in equity and good conscience, ought to repay it to the partnership" is without merit and is simply not supported by the evidence. In order for a payment by a partnership to a partner to constitute a loan, the ordinary indicia of a debtor-creditor relationship must exist, including an unconditional obligation to repay the advances. [2] The record of this case leaves no doubt that neither petitioner nor the other partners considered the payments to be loans. Petitioner was not expected to repay and did not repay any amounts. The Court, therefore, rejects this contention. Further, the record is clear and the evidence is uncontradicted that petitioner performed services for the partnership *450 on a full-time basis as a salesman during 1985. The fact that he received the payments in exchange for his continuing sales services is unmistakable. The independent salesperson who was hired to perform the same services petitioner was performing was paid in exactly the same manner as petitioner was paid. The payments petitioner received, therefore, were clearly compensation for services rendered in his capacity as a partner of Sumo Systems. Having so found, we now move to the treatment of these payments under the partnership provisions of the Internal Revenue Code, Subchapter K. Section 707(c) provides: (c) Guaranteed Payments. -- To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and, subject to section 263, for purposes of section 162(a) (relating to trade or business expenses).
The inquiry under section 707(c) is whether the payments for petitioner's services were "determined without regard to the income of the partnership." In Falconer v. Commissioner, 40 T.C. 1011, 1015 (1963), *451 the taxpayer joined in a partnership for the purposes of operating a private employment agency. No capital contribution was made by the taxpayer, but he agreed to perform services for the partnership. The partners further agreed that he would be paid $ 150 per week for his services. The payments were not contingent on partnership earnings or the taxpayer's distributive share thereof and were payable in any event. The payments, therefore, were clearly "determined without regard to income of the partnership." The litany of facts and circumstances in this case demonstrates that petitioner is in no better situation than the taxpayer in Falconer v. Commissioner, supra.
Here, petitioner's compensation was clearly determined without regard to the income of the partnership. First, the partners, including petitioner, testified that petitioner was to be paid a fixed amount over the year. There is no evidence that the payments were to be affected in any way by the earnings or profitability of the partnership. Further, petitioner was paid a total of $ 19,118 for 1985, an amount in excess of the partnership's reported income of $ 14,179, and there was no evidence that the decrease in the partnership's *452 reported taxable income, from $ 343,306 to $ 14,179, had any effect on the amount of compensation petitioner was entitled to receive. Additionally, there was no obligation upon petitioner to repay compensation in excess of partnership earnings for 1985, and clearly there was no such obligation with respect to his distributive share of earnings for 1985 because his distributive share of earnings was zero, yet he was still paid. The conclusion, therefore, is inescapable that the payments to petitioner, a partner in Sumo Systems, were "determined without regard to the income of the partnership" within the intent and meaning of section 707(c). As such, the payments constituted ordinary income under section 707(c), and section 731(a) is inapplicable. Section 1.707-1(c), Income Tax Regs.
Petitioner argues, however, that, because Sumo Systems did not in fact claim a deduction for the payments as an expense on its Form 1065, the payments are not includable in petitioner's income. In this connection, section 1.707-1(c), Income Tax Regs., provides that "a partner must include [guaranteed] payments as ordinary income for his taxable year within or with which ends the partnership taxable *453 year in which the partnership deducted such payments as paid or accrued under its method of accounting." (Emphasis added.) On this record, however, petitioner did not establish that Sumo Systems did not claim the payments to petitioner as deductions on its Form 1065 for 1985. Although Tammy Zahornacky, the bookkeeper for Sumo Systems, testified that the payments were not deducted by the partnership as expenses but were recorded as withdrawals of capital, she could not explain why a Form 1099 was issued by the partnership which reflected the payments to petitioner as nonemployee compensation, and why petitioner's Schedule K-1, filed with the Internal Revenue Service as part of the partnership's information return, did not show these payments as withdrawals or distributions of capital to petitioner during 1985. This documentary evidence is clearly inconsistent with the testimony of Tammy Zahornacky and is clearly inconsistent with the contention that the partnership did not deduct these payments in the computation of its ordinary income for 1985. Even if petitioner established that the partnership did not claim the payments as deductions in computing its income, this Court in Cagle v. Commissioner, 63 T.C. 86, 95 (1974), *454 affd. 539 F.2d 409 (5th Cir. 1976), held that it is not the actual tax treatment of the payment by the partnership which requires inclusion into income by the recipient under section 707(c), but the fact that such treatment becomes fixed at the partnership level. In order for the partnership to claim a deduction, the payment must independently satisfy the requirements of section 162(a). Includability at the partner level and deductibility at the partnership level of guaranteed payments are two separate questions. See also Gaines v. Commissioner, T.C. Memo. 1982-731.Accordingly, the fact that a partnership improperly characterizes guaranteed payments or fails to take such payments into account on its information return does not negate the fact that the guaranteed payments were incurred and became fixed at the partnership level, nor does it exonerate the partner receiving such payments from including the payments in income. Petitioner also contends that the payments were intended to represent "net take-home pay" and that the income tax attributable to such payments was, under his agreement, to be paid by the partnership. On this record, petitioner failed to establish that this was *455 the case. One of the other partners testified that the partnership was under no such agreement. No Federal income taxes were withheld by the partnership on the payments to petitioner. If the partnership had in fact agreed to assume liability and responsibility for petitioner's income taxes, and the partnership defaulted on this commitment, petitioner's remedy is against the partnership. An alleged default or breach of contract by the partnership does not exonerate petitioner from payment of Federal income taxes on compensation he received for services rendered. Finally, petitioner contended that the payments constituted distributions under section 731(a) and, because the distributions exceeded petitioner's adjusted basis in his partnership interest, he admittedly realized capital gain to the extent of such excess.
Section 731(a) provides, in part and as pertinent here, that, in the case of a distribution by a partnership to a partner, gain shall be recognized by such partner to the extent that any money distributed exceeds the adjusted basis of the partner's interest in the partnership immediately before the distribution. Any gain or loss recognized as the result of partnership *456 distributions is considered gain or loss from the sale or exchange of the partnership interest. Section 1.731-1(a)(3), Income Tax Regs., characterizes such gain or loss as capital gain or loss. Section 1.731-1(a)(1), Income Tax Regs., provides that "distributions" include (1) "distributions in liquidation" of a partner's entire interest in a partnership, and (2) "current distributions," defined as distributions other than in liquidation of an entire partnership interest. Section 1.731-1(a)(1), Income Tax Regs., further provides that advances or drawings of money against a partner's distributive share of income shall be treated as current distributions. Petitioner's payments from Sumo Systems were clearly not "distributions" within the intent and meaning of section 731(a) and the pertinent regulations. First, no payments were made to petitioner in settlement or in liquidation of his capital account at the time he withdrew from the partnership. The partners testified that no purchase or redemption of petitioner's interest was made. Accordingly, the payments were clearly not "distributions in liquidation." With respect to "current distributions," as discussed earlier, the payments were *457 guaranteed payments for services rendered by petitioner to the partnership. The payments were not "draws," chargeable to his capital account, as contended by petitioner. For tax purposes, the partnership reported these payments as nonemployee compensation on Form 1099; and, in its partnership information return, the Schedule K-1 for petitioner reflected no capital account withdrawals or distributions. All of the payments received by petitioner were identifiable with the services that he performed as a salesman for Sumo Systems, and none of the payments were related to or identified with his capital account, either as current distributions or as distributions in the complete liquidation of his partnership interest. Moreover, since petitioner's interest in the profits and losses of the partnership for 1985 was zero, he had no "distributive share of income" from which the payments could be considered as advances or draws and treated as current distributions under section 1.731-1(a)(1), Income Tax Regs. Accordingly, petitioner's payments are not governed by section 731(a).
Section 1.1402(a)-1(b), Income Tax Regs., in defining self-employment income for purposes of the self-employment *458 tax under section 1401(a), provides that: "Gross income derived by an individual from a trade or business includes payments received by him from a partnership of which he is a member for services rendered to the partnership or for the use of capital by the partnership, to the extent the payments are determined without regard to the income of the partnership." The payments received by petitioner, therefore, constituted self-employment income for purposes of the self-employment tax under section 1401(a).
The addition to tax for negligence under section 6653(a)(1) is applicable to the entire underpayment if any part of the underpayment is attributable to negligence or intentional disregard of rules or regulations. The addition under section 6653(a)(2) applies to the portion of the underpayment attributable to negligence. Negligence is the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners failed in sustaining their burden under Rule 142(a) of establishing that they were not negligent or did not intentionally disregard rules or regulations. Although partnership *459 distribution and profit and loss allocation arrangements can be quite technical and complex to the lay person, the evidence here indicates that the partnership enlisted the services of an accountant and, based on the facts explained to him, the accountant prepared the returns for the partnership and issued the Form 1099 which clearly and correctly characterized the payments to petitioner as ordinary income. Petitioners ignored this professional's determination and the Form 1099 which, at the very least, constituted negligence. Respondent, therefore, is sustained on the additions to tax under section 6653(a)(1) and (2). Petitioners also bear the burden of proving that they are not liable for the addition to tax for substantial understatement of income tax under section 6661(a). Rule 142(a). Section 6661(a) provides for an addition to tax of 25 percent of the amount of any substantial understatement. If the amount of tax required to be shown on the return exceeds the amount of tax actually shown on the return by the greater of $ 5,000 or 10 percent of the amount required to be shown, there is an "understatement" which is "substantial." Section 6661(b)(1) and (2). According to the *460 notice of deficiency, the tax which was required to be shown on petitioners' return was $ 9,392.92. Petitioners' return showed a tax of $ 2,302. The difference of $ 7,090.92 is the understatement of tax. That figure clearly exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown on the return, $ 939.29; therefore, the understatement of tax is "substantial." Petitioners have not raised any justiciable error in respondent's determination of this addition to tax and have not shown that the understatement should be reduced pursuant to section 6661(b)(2)(B). Accordingly, respondent is sustained on this issue. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Mangham v. Commissioner, T.C. Memo. 1980-280↩.